IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 402-282 |
| | ) | |
| ANTONIO DECORE SAMUEL | ) | |
| | ) | |

GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO REDUCE SENTENCE

Defendant Antonio Decore Samuel moves for a sentence reduction under the
First Step Act, Pub. L. 115-391, 132 Stat. 5194 (2018), requesting a new sentence of
time served with a three-year term of supervised release.  (Doc. 60.) The
Government opposes this request, though, because the First Step Act did not lower
his statutory penalties.  Alternatively, even if Samuel were eligible for
consideration of a reduction in sentence, this Court should exercise its discretion
under the First Step Act and decline to do so.[1]

I.      Background.

In July 2002, Georgia parole officers arrested Samuel on a violation warrant.
(PSR ¶ 4.)[2]  The parole officer searched Samuel and found a plastic bag which
eventually was later determined to contain crack cocaine, along with $2,021 in
another pocket.  (PSR ¶ 4.)  A search of Samuel's apartment found several

---

[1] For the reasons stated herein, the United States also opposes Samuel's
Request for Immediate Release.  (Doc. 61.)

[2] "PSR" refers to the presentence investigation report dated April 3, 2003.

additional plastic bags containing crack cocaine, located in a toy truck in a child's
bedroom.  (PSR ¶ 5.)  Additional cocaine was found in the child's closet.  (PSR ¶ 5.)
In Samuel's bedroom, officers discovered digital scales, a large amount of crack
cocaine under the bed, and boxes ammunition.  (PSR ¶ 5.)  Subsequent laboratory
tests confirmed 143.06 grams of crack cocaine and 83.8 grams of powder cocaine
were recovered by officers.  (PSR ¶ 6.)

In November 2002, the grand jury indicted Samuel for possession with intent
to distribute over 50 grams of crack cocaine and a quantity of powder cocaine, in
violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).  (PSR ¶ 1; Doc. 34.)  In February
2003, under a written plea agreement, Samuel pled guilty to the lesser-included
charge, that is, possession with intent to distribute five grams or more of cocaine
base and a quantity of powder cocaine.  (PSR ¶ 3; Doc. 34).  At the time, this carried
a range of punishment of not less than five years imprisonment and not more than
40 years imprisonment, along with a minimum 4-year term of supervised release,
under § 841(b)(1)(B).  (Doc. 34.)  As part of this agreement, the Government agreed
it would not file a sentencing enhancement under 21 U.S.C. § 851 for prior drug
convictions, and would not object if the probation office recommended a three-level
guideline reduction for acceptance of responsibility.  (Doc. 34.)

The PSR determined that Samuel was responsible for 143.9 grams of crack
cocaine.  (PSR ¶¶ 6, 13.)  Based on his criminal history, he was considered a career
offender under U.S.S.G. § 4B1.1, resulting in an offense level of 34.  (PSR ¶ 21.)
This criminal history included prior state convictions for possession of cocaine with

intent to distribute, trafficking cocaine, and possession of marijuana.  (PSR ¶¶ 30,

34.)  The PSR did not award Samuel any acceptance of responsibility because he

denied culpability to the probation officer.  (PSR ¶¶ 9-11, 22.)  Based on a criminal

history category VI, Samuel's guidelines range was 262 to 327 months'

imprisonment.  (PSR ¶¶ 39, 57.)  The PSR noted that, but for the plea agreement,

had Samuel been convicted as originally charged, and had the government filed its

notice under § 851, he would have been subject to mandatory life imprisonment.

(PSR ¶ 58.)

     This Court held a sentencing hearing on April 16, 2003.  It adopted the PSR's

calculations and sentenced Samuel to 262 month's imprisonment, the low-end of the

calculated guidelines.  (Doc. 35.)  It also imposed a five-year term of supervised

release.  (Doc. 35.)  On appeal, Samuel did not challenge the court's drug quantity

calculation, but instead focused on whether he should have received a reduction for

acceptance of responsibility; the Eleventh Circuit affirmed Samuel's sentence.  *See*

*United States v. Samuel*, 103 F. App'x 666 (11th Cir. 2004) (table decision).

     In February 2012, Samuel moved for a sentence reduction under 18 U.S.C. §

3582(c)(2) based upon amendments to the sentencing guidelines.  (Doc. 49.)  This

Court denied the request.  (Doc. 51.)  In December 2012, Samuel filed another §

3582(c)(2) motion based on amendments to the guidelines; again, this Court denied

the motion.  (Docs. 53, 54.)

     To the best of the Government's knowledge, Samuel has been in continual

custody since was taken into custody on the state parole violation warrant on July

17, 2002, and taken into federal custody via a writ on November 20, 2002.  (PSR at

1.)  He has not been granted a sentence reduction by a motion under either U.S.S.G.

§ 5K1.1 or Federal Rule of Criminal Procedure 35.  According to the Bureau of

Prison's inmate locator, he is currently scheduled to be released from custody on

July 23, 2023.

## II.    Statutory scheme of First Step Act, Fair Sentencing Act, and 18 U.S.C. § 3582(c)(1)(B).

According to § 3582(c)(1)(B), the district court may "modify an imposed term

of imprisonment to the extent otherwise expressly permitted by statute . . . ."  A

defendant seeking a § 3582(c) sentence reduction bears the initial burden of

establishing that he is, in fact, eligible for such relief. *See United States v.*

*Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (holding that, under analogous §

3582(c)(2), defendant bears the burden of establishing eligibility for sentence

reduction).

The First Step Act applies to a "covered offense"—*i.e.*, "a violation of a

Federal criminal statute, the statutory penalties for which were modified by section

2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that

was committed before August 3, 2010."[3]  Pub. L. 115-391, § 404, 132 Stat. 5194

(2018).  The First Step Act provides that the district court may "impose a reduced

sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect

---

[3]  The Fair Sentencing Act was enacted on August 3, 2010, and did not apply retroactively.  *See United States v. Berry*, 701 F.3d 374, 377 (11th Cir. 2012) (holding that under general savings clause, 1 U.S.C. § 109, Fair Sentencing Act did not apply retroactively).

at the time the covered offense was committed." *Id.* A straightforward reading of Section 404 directs the Court to first determine whether it may impose a reduced sentence, and, if so, then decide what sentence would have been appropriate had the Fair Sentencing Act been in effect at the time the defendant committed his crime. In other words, the First Step Act only applies to those defendants sentenced prior to August 3, 2010, and whose statutory sentencing exposure would be different under Section 2 of the Fair Sentencing Act (regardless of current guidelines calculations). Section 404(c) explains, though, that the district court's decision is discretionary, stating that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." *Id.*

Section 2 of the Fair Sentencing Act reduced the penalties for offenses involving cocaine base by increasing the threshold drug quantities required to trigger mandatory minimum and statutory maximum sentences under 21 U.S.C. §§ 841(b)(1)(A) and (b)(1)(B). *See* Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2, 124 Stat. 2372. For example, prior to enactment of the Fair Sentencing Act, in order to be subject to a five-year mandatory minimum sentence under 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), a defendant needed to be responsible for five grams or more of cocaine base. *See DePierre v. United States*, 564 U.S. 70, 75 & n.3 (2011). After the Fair Sentencing Act, though, a defendant must be responsible for at least 28 grams of cocaine base in order to trigger the same five-year mandatory minimum sentence under § 841(b)(1)(A). *See id.* Section 3 of the Fair Sentencing Act modified

the penalties related to simple possession of cocaine base under 21 U.S.C. § 844(a).
*See* Pub. L. No. 111-220, § 3, 124 Stat. 2372.

### III. Samuel fails to meet his burden that he is eligible under the First Step Act because his statutory range of punishment remains unchanged.

#### A. Samuel's convictions are not "covered offenses" under the First Step Act.

In this case, Samuel is **not eligible for relief under Section 404 of the First Step Act because the same statutory penalties applied to his offense both before and after the Fair Sentencing Act.** Although the Fair Sentencing Act increased the threshold crack quantity for a Section 841(b)(1)(B) offense to 28 grams, the 143.9 gram quantity involved in this case far exceeds that amount, meaning the statutory penalties remain the same. As such, it is not a "covered offense" within the meaning of the statute and Samuel remains ineligible for a sentence reduction. *See* First Step Act, Pub. L. 115-391, § 404, 132 Stat. 5194.

#### B. Statutory language of First Step Act establishes that district court should consider actual amount of crack cocaine involved in the offense.

Samuel contends, however, that he is eligible because the lesser-included charge to which he pled guilty involved only five grams of crack, and under the Fair Sentencing Act, the penalties for that quantity are now lower: a maximum of 20 years under Section 841(b)(1)(C). (Doc. 60 at 10-11.) He further contends that application now of higher penalties based on the court's original quantity finding at sentencing would violate the rules stated in *Apprendi v. New Jersey,* 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013). (Doc. 60 at 11 n.10.) These

6

arguments fail, as they are defeated by the pertinent statutory language and extensive precedent. The government allowed Samuel to plead to a lesser-included charge that only involved five grams of cocaine base, rather than 28 grams, because that was the pertinent statutory threshold at the time. *See, e.g., United States v. Haynes*, No. 08-441, 2019 WL 1430125, at *2 (D. Neb. Mar. 29, 2019) ("[T]he government charged the offense in Count II of the Indictment in accordance with the wording of the statutes as they existed at the time of the Indictment. If the fair Sentencing Act had been in effect at the time of the Indictment, the underlying and undisputed facts demonstrate that the government still would have charged Haynes under 21 U.S.C. § 841(b)(1)(B)(iii)."). Applying that artificial quantity now in this case would create a gross disparity with similarly situated offenders charged after the Fair Sentencing Act was adopted in 2010, defeating the plain Congressional intent in the First Step Act of assuring like treatment of like offenders. As will be explained, the First Step Act does not permit that result.

Under 18 U.S.C. § 3582(c), "[t]he court may not modify a term of imprisonment once it has been imposed except that (1) . . . (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute . . . ." The relevant statute here—the First Step Act—does not permit relief in this case.

A straightforward reading of Section 404 of the First Step Act calls for the court to make two sequential determinations: first, whether it may impose a reduced sentence, and second, if so, what sentence would have been appropriate had

the Fair Sentencing Act been in effect at the time the defendant committed his crime. Here, the defendant's claim fails at the first step (and fails at the second step, too).

Section 404(b) authorizes a sentence reduction only if the court previously imposed a sentence for a "covered offense." A "covered offense," in turn, is a "violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before August 3, 2010." First Step Act § 404(a). The statute thus keys eligibility not on the defendant's statute of conviction, but on the specific "violation" that the defendant "committed." And a "violation" qualifies as a "covered offense" only if the "statutory penalties for" that violation were "modified by sections 2 or 3 of the Fair Sentencing Act."

By referring to a "violation" that was "committed" on a particular date, Section 404(a) sensibly grounds the eligibility inquiry in the actual conduct involved in the defendant's violation, rather than the statute under which the defendant was convicted.  In *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 489 (1985), for instance, the Supreme Court held in the context of 18 U.S.C. § 1964(c) that the term "violation" "refers only to a failure to adhere to legal requirements," not a criminal conviction. The Court explained that when Congress wishes to refer to "prior convictions, rather than prior criminal activity," it uses the term "conviction," not "violation." *Id.* at 489 n.7. And in *United States v. Hayes*, 555 U.S. 415 (2009), the Court held that a statute defining a prior conviction for a "misdemeanor crime of

8

domestic violence" referred in part to the defendant's actual conduct, not the statutory elements of the crime, when it described the prior offense as one "*committed by* a current or former spouse, parent, or guardian." *Id.* at 426 (emphasis added) (quoting 18 U.S.C. § 921(a)(33)(A));[4] *cf. Nijhawan v. Holder*, 557 U.S. 29, 32 (2009) (holding that a statutory term describing a prior "offense" referred not to a generic crime but to the "particular circumstances in which an offender committed" that offense "on a particular occasion").

Here, Congress directed courts to assess eligibility by reference to the specific violation the defendant committed, rather than his statute of conviction. Congress easily could have declared eligible "any defendant convicted under a statute for which the penalties were altered by the Fair Sentencing Act of 2010, so long as that defendant has not already been sentenced in accordance with that Act." It did not do that. Instead, Congress focused specifically on the "violation" for which the statutory penalties were modified by the Fair Sentencing Act. As explained above, the operative clause is: "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of

---

[4] In the statute at issue in *Hayes*, the term "misdemeanor crime of domestic violence" was defined as an offense that "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabitated with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim." The Court held that the domestic relation of the perpetrator need not be an element of the offense of conviction; rather, the government may prove as a factual matter that the person who "committed" the offense at issue fell within one of the described relationships.

2010 . . . that was committed before August 3, 2010." According to the Samuel's theory, this provides that a defendant is eligible whenever the penalties set forth in a statute under which he was charged were modified, regardless of the actual facts of the offense. But this conclusion misreads the statute, erroneously construing the phrase "the statutory penalties for which" to modify "Federal criminal statute," rather than the full phrase "a violation of a Federal criminal statute."

This construction suffers from two related infirmities. First, if all that mattered in determining eligibility were whether the penalties associated with the defendant's statute of conviction were modified, then any defendant convicted of any drug offense under Section 841 would be eligible for a reduction, even if the offense did not involve crack cocaine. Plainly, Congress included the word "violation" to ensure that only those defendants whose penalties actually were affected by the Fair Sentencing Act would be eligible for a discretionary reduction. And second, if Samuel's theory were correct, it would make no sense for Congress to have included the word "statutory" in describing the relevant penalties. That is, if Congress intended the phrase "the statutory penalties for which" to modify only "Federal criminal statute," Congress naturally would have dropped "statutory" to avoid an immediate redundancy ("a Federal criminal statute, the penalties for which. . . .").

Moreover, Section 404 directs attention to the circumstances under which the particular violation was "committed," not to the statute of conviction generically. Both Sections 404(a) and 404(b) address the date of commission, and in Section 404(a) in particular, Congress added a date-based qualifier: "that was committed

10

before August 3, 2010." Thus, the inquiry into what counts as a "covered offense" necessarily turns on facts specific to the defendant's offense—when it was committed—and not merely the statutory definitions that appear in 21 U.S.C. § 841(b)(1).

Thus, it is clear from the text that a defendant is eligible only if the statutory penalties for his violation were modified by the Fair Sentencing Act. In other words, Congress directed courts assessing eligibility to take a case-specific approach, focusing on the actual violation at issue. Courts therefore should not blind themselves to the actual quantity of crack involved in defendants' offenses— especially if the defendant admitted or did not dispute those quantities. If, as is the case here, the defendant's "violation" involved a quantity of crack that would have triggered the same penalty after enactment of the Fair Sentencing Act, then that defendant's "violation" is not one for which the statutory penalties were modified by the Fair Sentencing Act. Accordingly, the court did not impose a sentence for a "covered offense," and the defendant is ineligible for a reduced sentence.

A contrary reading, based on Samuel's theory, not only undermines the statutory text, but also conflicts with Congress's manifest intent, as it would lead to profoundly unfair and illogical disparities between defendants charged before and after the Fair Sentencing Act. There is no dispute that Congress, in enacting Section 404 of the First Step Act in 2018, was concerned about a particular class of cocaine base defendants: those whose statutory penalties would have been lower but for the fortuity that they were sentenced before August 3, 2010, and therefore could

not take advantage of the Fair Sentencing Act. *See Dorsey v. United States*, 567 U.S. 260 (2012). For instance, if a crime involved 20 grams of crack, and the defendant pled guilty to possession with intent to distribute five grams or more of crack under Section 841(b)(1)(B) before August 3, 2010, a court should consider whether to grant a reduced sentence, as the Fair Sentencing Act places the 20-gram offense in Section 841(b)(1)(C).  This relief puts the offender in an identical position to those sentenced after August 3, 2010.  If, however, the original crime involved at least 28 grams of crack, the defendant's violation would have triggered the same Section 841(b)(1)(B) penalties both before and after the Fair Sentencing Act.  If such a defendant had been sentenced after the Fair Sentencing Act, all agree that he could not obtain a discretionary reduction of sentence today. But under Samuel's approach, had that same defendant been sentenced before the Fair Sentencing Act took effect, he would now be entitled to a discretionary reduction of sentence. Nothing in the text or legislative history of the First Step Act suggests that Congress would have countenanced this asymmetry, which is entirely unfair to defendants sentenced after enactment of the Fair Sentencing Act.

This case illustrates the point. As explained, the defendant's offense involved more than 28 grams of crack.  Every crack offender charged with and convicted of such a crime since August 3, 2010, has been sentenced under that same provision. If the defendant here were to receive a sentence reduction based on the fiction that his offense involved only five grams of crack, his statutory sentencing exposure would be lower than that faced by everyone who was charged with the same crime

after August 3, 2010. The purpose of the First Step Act was to reconcile the disparity between those sentenced before the Act and those sentenced afterwards. It would turn that goal on its head to instead afford greater relief, untethered to any actual facts, to earlier offenders.

To make matters worse, under the alternative approach, nearly *every* defendant charged under Sections 841(b)(1)(A) or (b)(1)(B) before the Fair Sentencing Act would now be eligible for a sentence reduction. Before the Fair Sentencing Act, there was no reason for any prosecutor to allege in a charging document more than five grams of crack cocaine for a § 841(b)(1)(B) violation. Under the Fair Sentencing Act, however, that specific quantity is treated less severely. Thus, under the Samuel's view, nearly every defendant charged under § 841(b)(1)(B) prior to August 3, 2010, would be treated differently from identically situated defendants charged after the Fair Sentencing Act became effective, even if their violations involved crack quantities substantially exceeding the new statutory thresholds.  Samuel does not, and cannot, offer any justification for the mass disparity he seeks, or any explanation of why Congress would have intended such an odd result.

### C. Apprendi *and* Alleyne *do not alter statutory interpretation analysis.*

Instead, Samuel suggests that denial of eligibility at this time, resting on the factual determinations made at the original sentencing, would violate the rulings in *Apprendi v. New Jersey,* 530 U.S. 466 (2000), and, by implication, *Alleyne v. United States*, 570 U.S. 99 (2013), that any fact increasing either a statutory maximum or

mandatory minimum penalty must be charged in an indictment and found by a jury or admitted by the defendant.[5]  But these cases do not apply here, because the First Step Act authorizes a court only to "reduce" a sentence, not increase it, and further makes clear that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." First Step Act § 404(c).  *See United States v. Hamilton*, 715 F.3d 328, 340-41 (11th Cir. 2013) (holding district court on § 3582(c)(2) motion is to consider record at original sentencing to determine drug quantity properly attributable to defendant).

The situation matches that in *Dillon v. United States,* 560 U.S. 817 (2010). There, the Court considered a motion for sentencing reduction under 18 U.S.C. § 3582(c)(2). Section 3582(c)(2) allows a court to reduce a sentence, in its discretion, upon adoption of a sentencing guideline amendment designated by the Sentencing Commission as retroactive. The Commission's policy statement implementing Section 3582(c)(2) decreed that a court could not, except in limited, specified circumstances, reduce a sentence below the range set by the amended guideline provision. Defendants objected that a further reduction should be allowed under *Booker v. United States*, 543 U.S. 220 (2005), which rendered the guidelines advisory to remedy a violation of *Apprendi.*

---

[5]  In fact, *Alleyne* applied to very few, if any, defendants who might benefit from the First Step Act. Any defendant sentenced before August 3, 2010, and whose conviction became final before *Alleyne* was decided on June 17, 2013, was subject to the rule of *Harris v. United States*, 536 U.S. 545 (2002), that a jury need not find a quantity increasing a mandatory minimum sentence, a decision later overruled in *Alleyne.*

14

The Supreme Court disagreed. It stated that "[b]y its terms, § 3582(c)(2) does not authorize a sentencing or resentencing proceeding." Rather, it allows courts to "reduce" a sentence of imprisonment in limited circumstances identified by the Sentencing Commission. The Court explained:

> Given the limited scope and purpose of § 3582(c)(2), we conclude that proceedings under that section do not implicate the interests identified in *Booker*. Notably, the sentence-modification proceedings authorized by § 3582(c)(2) are not constitutionally compelled. We are aware of no constitutional requirement of retroactivity that entitles defendants sentenced to a term of imprisonment to the benefit of subsequent Guidelines amendments. Rather, § 3582(c)(2) represents a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines.
>
> Viewed that way, proceedings under § 3582(c)(2) do not implicate the Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt. Taking the original sentence as given, any facts found by a judge at a § 3582(c)(2) proceeding do not serve to increase the prescribed range of punishment; instead, they affect only the judge's exercise of discretion within that range.
>
> *Id.* at 828. This reasoning applies with full force here.

Relying on the opening passage of 18 U.S.C. § 3582(c)—"The court may not modify a term of imprisonment once it has been imposed except that"—the *Dillon* Court repeatedly described an action under Section 3582(c)(2) as a "sentence-modification proceeding," and further emphasized the language of Section 3582(c)(2), which permits a court to "reduce" a sentence based on a retroactive guideline amendment. The Court declared, "[b]y its terms, § 3582(c)(2) does not authorize a sentencing or resentencing proceeding. Instead, it provides for the 'modif[ication of] a term of imprisonment' by giving courts the power to 'reduce' an otherwise final sentence in circumstances specified by the Commission." *Dillon*, 560

U.S. at 825. This assessment applies here as well. A sentencing reduction is permitted under Section 404 of the First Step Act based on 18 U.S.C. § 3582(c)(1)(B), which provides, "[t]he court may not modify a term of imprisonment once it has been imposed except that . . . the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute . . . ." This authorization appears under the same prefatory language in Section 3582(c) ("The court may not modify a term of imprisonment once it has been imposed except that") on which *Dillon* relied, and Section 404 itself repeatedly refers to "reducing" a sentence. Thus, this matter also involves a "sentence-modification proceeding" which, as *Dillon* held, may be resolved based on facts determined by the court at the sentence-modification proceeding.[6]

---

[6]  Section 3582(c)(2), addressed in *Dillon*, states that "the court may *reduce* the term of imprisonment." Section 404(b) of the First Step Act states that the court may "*impose a reduced sentence*," while Section 404(c) states: "No court shall entertain a motion made under this section to *reduce* a sentence if the sentence was previously imposed or previously *reduced* in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 . . . or if a previous motion made under this section to *reduce* the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to *reduce* any sentence pursuant to this section." The terminology of the First Step Act follows that of Section 3582(c)(2).

Yet some defendants argue that the singular use of the term "impose a reduced sentence" in Section 404(b) mandates a *de novo* resentencing. This argument is unpersuasive. As one court observed, "[t]he First Step Act's use of the word 'impose' must be read in context. . . . The First Step Act authorizes a court to 'impose a reduced sentence,' and otherwise refers to a proceeding to 'reduce' a sentence. . . . The First Step Act does not call for a full or plenary resentencing." *United States v. Potts*, 2019 WL 1059837, at *3 (S.D. Fla. Mar. 6, 2019). Indeed, in discussing sentence reductions under Section 3582(c)(2)—which are not *de novo* resentencings—the Supreme Court has freely used the word "impose" in relation to the new, lower sentence that results from applying the retroactive amendment. *See,*

Three additional facets of the Court's reasoning in *Dillon* support the conclusion that Section 404 of the First Step Act calls for a conduct-specific inquiry without reference to *Apprendi* or *Alleyne*. First, just like the sentencing reductions based on retroactive Guidelines amendments at issue in *Dillon*, the retroactive application of the Fair Sentencing Act is not constitutionally compelled, but rather is an act of Congressional lenity. That is because, as an ordinary rule and absent a Congressional declaration, new statutory provisions do not abrogate prior penalties. *See* 1 U.S.C. § 109.[7] The First Step Act solely calls for the court to determine whether the statutory penalties would have been different based on the "violation" the defendant "committed," and if so, exercise discretion in determining whether to reduce the sentence.

Second, the Court in *Dillon* observed that "[i]t is also notable that the provision applies only to a limited class of prisoners—namely, those whose sentence was based on a sentencing range subsequently lowered by the Commission. Section 3582(c)(2)'s text, together with its narrow scope, shows that Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a

---

*e.g.*, *Dillon*, 560 U.S. at 827 ("Only if the sentencing court originally imposed a term of imprisonment below the Guidelines range does § 1B1.10 authorize a court proceeding under § 3582(c)(2) to impose a term 'comparably' below the amended range."). Nothing in the plain meaning of the word "impose" precludes using that word to describe a court's action in reducing a sentence under Section 3582(c), which, consistent with *Dillon*, is not subject to the rules of *Apprendi* and *Alleyne*.

[7] There is no requirement, constitutional or otherwise, that Congress make any sentencing change retroactive. *See* 1 U.S.C. § 109 (stating presumption that amendments to penalties do not apply retroactively); *Dorsey v. United States*, 567 U.S. 260 (2012).

plenary resentencing proceeding." *Dillon,* 560 U.S. at 825-26.  As in the Section

3582(c)(2) context, the First Step Act applies only to a narrow set of offenders, *i.e.*,

those who committed crack cocaine offenses and were sentenced before August 3,

2010.  And the Act expressly states that the court is not required to reduce any

sentence.

> Finally, the *Dillon* Court added:
>
> This understanding of § 3582(c)(2) as a narrow exception to the rule of
> finality finds further support outside the statute. Federal Rule of
> Criminal Procedure 43 requires that a defendant be present at
> "sentencing," *see* Rule 43(a)(3), but it excludes from that requirement
> proceedings that "involv[e] the correction or reduction of sentence under
> Rule 35 or 18 U.S.C. § 3582(c)," Rule 43(b)(4). Like § 3582(c)(2), Rule 35
> delineates a limited set of circumstances in which a sentence may be
> corrected or reduced. Specifically, it authorizes a court to "correct a
> sentence that resulted from arithmetical, technical, or other clear error"
> within 14 days after sentencing, Rule 35(a), and it authorizes a
> reduction for substantial assistance on the Government's motion, Rule
> 35(b). Rule 43 therefore sets the proceedings authorized by § 3582(c)(2)
> and Rule 35 apart from other sentencing proceedings.

*Dillon*, 560 U.S. at 827-28.  Rule 43 by its term applies to *all* motions under Section

3582, not just motions under Section 3582(c)(2) based on retroactive guideline

amendments. Rule 43 therefore applies here, where the sentencing reduction is

authorized by Section 3582(c)(1)(B), and thus the Supreme Court's explanation

applies here too.[8]  These proceedings, as in *Dillon*, do not warrant the application of *Apprendi* or *Alleyne*.[9]

Given the holding in *Dillon*, every appellate court to address the issue has held that a court, when determining whether a defendant is eligible for a sentencing reduction under Section 3582(c)(2) based on a retroactive amendment to the narcotics sentencing guideline, which is driven by drug quantity, may make factual findings based on the original record to determine whether the offense involved a quantity that results in the same sentencing range under the amended guideline and therefore renders the defendant ineligible for relief. *See, e.g.*, *United States v. Rios*, 765 F.3d 133, 138 (2d Cir. 2014); *United States v. Peters*, 843 F.3d 572, 578 (4th Cir. 2016); *United States v. Valentine*, 694 F.3d 665, 670 (6th Cir. 2012); *United States v. Hall*, 600 F.3d 872, 876 (7th Cir. 2010); *United States v. Anderson*, 707 F.3d 973, 975 (8th Cir. 2013); *United States v. Mercado-Moreno*, 869 F.3d 942, 953–55 (9th Cir. 2017); *United States v. Battle*, 706 F.3d 1313, 1319 (10th Cir. 2013);

---

[8]  Courts are unanimous in ruling that Rule 43 applies to motions under Section 404 of the First Step Act and therefore no hearing or plenary resentencing proceeding is required. *See, e.g.*, *Potts*, 2019 WL 1059837, at *2; *United States v. Glover*, 2019 WL 1924706, at *9-10 (S.D. Fla. May 1, 2019); *United States v. Kamber*, 2019 WL 399935, *2 (S.D. Ill. Jan. 31, 2019); *United States v. Perkins*, 2019 WL 1578367, at *3 (N.D. Iowa Apr. 3, 2019); *United States v. Davis*, 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019); *United States v. Shelton*, 2019 WL 1598921, at *2 (D.S.C. Apr. 15, 2019); *United States v. Coleman*, 2019 WL 1877229, at *8 (E.D. Wis. Apr. 26, 2019).

[9]  The *Dillon* Court further stated: "The substantial role Congress gave the Commission with respect to sentence-modification proceedings further supports this conclusion." *Dillon*, 560 U.S. at 826. That feature is absent here, but the remainder of the *Dillon* Court's statutory analysis fully supports the conclusion suggested here, as explained above.

*Hamilton*, 715 F.3d at 340; *United States v. Wyche,* 741 F.3d 1284, 1293 (D.C. Cir. 2014). In reasoning that is directly applicable to the present situation as well, the Ninth Circuit explained:

> Typically, in those cases, neither the court nor the parties anticipate a future Guidelines amendment that will move the line and require further fact-finding to determine the defendant's eligibility for a sentence reduction under § 3582(c)(2).
>
> In those cases where a sentencing court's quantity finding is ambiguous or incomplete, a district court may need to identify the quantity attributable to the defendant with more precision to compare it against the revised drug quantity threshold under the relevant Guidelines amendment. The Supreme Court indicated that such fact-finding was permissible in *Dillon*. *See* 560 U.S. at 828-29 (stating that "facts found by a judge at a § 3582(c)(2) proceeding do not serve to increase the prescribed range of punishment").

*Mercado-Moreno*, 869 F.3d at 954. The same fact-finding is necessary here to compare the drug quantity attributable to Samuel against the revised drug quantity thresholds under the Fair Sentencing Act, and is not restricted by *Apprendi* and *Alleyne*. In this case, however, the fact-finding is easy: It is undisputed that the defendant's offense involved 143.9 grams of crack, which is significantly above the current 28 grams threshold under § 841(b)(1)(B).

It also bears emphasis that, as noted above, any reduction in sentence under the First Step Act must comport with Section 3582(c)(1)(B), which states, "[t]he court may not modify a term of imprisonment once it has been imposed except that . . . the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute . . . ." The First Step Act allows imposition of a reduced sentence as if the Fair Sentencing Act "were in effect at the time the

covered offense was committed." It does not "expressly" authorize the retroactive application of *Apprendi* and *Alleyne*, which are inapplicable for this reason as well. Courts are unanimous in holding that *Apprendi*[10] and *Alleyne*[11] do not apply retroactively to undermine an otherwise final judgment, and Congress did not expressly state otherwise here. It did not decree that only this small set of offenders sentenced before August 3, 2010—those who committed crack cocaine offenses for which the statutory sentencing ranges have changed—may receive consideration under *Apprendi* and *Alleyne*, while no one else may.[12]

While some district courts have not uniformly adopted the government's approach[13] (or any other approach, for that matter), several courts have

---

[10] *Apprendi* does not apply retroactively on collateral review. *See McCoy v. United States*, 266 F.3d 1245, 1256-58 (11th Cir. 2001).

In *Schriro v. Summerlin*, 542 U.S. 348 (2004), consistent with all of these decisions, the Supreme Court held that *Ring v. Arizona*, 536 U.S. 584 (2002)—which, in reliance on *Apprendi*, held that aggravating circumstances in a death penalty prosecution must be found by a jury rather than a judge—does not apply retroactively on collateral review. The Court explained that judicial factfinding might actually be more accurate, and in any event does not so "seriously diminish" accuracy that there is an "'impermissibly large risk'" of punishing conduct the law does not reach. 542 U.S. at 355-56 (citations omitted).

[11] *Alleyne* does not apply retroactively on collateral review. *See United States v. Harris*, 741 F.3d 1245, 1250 n.3 (11th Cir. 2014).

[12] In contrast, where Congress authorizes *de novo* resentencing, it states that authority explicitly. *See, e.g.*, 18 U.S.C. § 3742(f) and (g) (resentencings on remand following direct appeal); 28 U.S.C. § 2255(b) (resentencings in habeas context).

[13] *See, e.g., United States v. Davis*, No. 07-245S, 2019 WL 1054554 (W.D.N.Y. Mar. 6, 2019) (concluding First Step Act applies to offense rather than actual conduct). The *Davis* court, however, did not actually analyze the statutory text, simply declaring reliance on the "plain language" of the First Step Act, adding, "it is

persuasively approved the position set forth here.  However, while the Eleventh

Circuit has yet to rule on the issue in the First Step Act context, other courts,

including some within the Eleventh Circuit, have adopted the better-reasoned

approach that the First Step Act relates to conduct as found by the district court,

and that *Apprendi* and *Alleyne* are inapplicable.  *See, e.g., United States v.

Banuelos*, No. 02-084, 2019 WL 2191788, at *2-*3 (D.N.M. May 21, 2019) ("[T]he

Court predicts the Tenth Circuit would decline to grant First Step relief based on

*Apprendi* and *Alleyne*."); *United States v. McKinney*, 382 F. Supp. 3d 1163, 1165-69

(D. Kan. 2019) (holding defendant not entitled to plenary resentencing); *United

States v. Curb*, No. 06-324-31, 2019 WL 2017184, at *3 (N.D. Ill. May 7, 2019) ("The

First Step Act does not grant courts a general license to resentence defendants

convicted of pre-[Fair Sentencing Act] crack cocaine offenses."); *Glover*, 377 F. Supp.

3d at 1354-56; *United States v. Blocker*, 378 F. Supp. 3d 1125, 1128-29 (N.D. Fla.

Apr. 25, 2019) (holding that defendant's conduct, rather than drug amount charged

in indictment, controls under First Step Act).

    In fact, recently a court in this district addressed these very issues.  Chief

Judge Hall held that, under the First Step Act, it was the amount of crack cocaine

actually involved in the offense, rather than the charged amount, that controlled

the analysis.  *See United States v. Gaulden*, No. CR 499-001, slip op. at 6 (S.D. Ga.

July 7, 2019) (explaining that charge involved 30.2 grams of crack cocaine meaning

---

the statute of conviction, not actual conduct, that controls eligibility under the First
Step Act."  *Id.* at *2-3.  The Government appealed the district court's decision.  *See
United States v. Davis*, No. 19-874 (2d Cir. filed Apr. 5, 2019).

that defendant was still subject to § 841(b)(1)(B) penalties).  Chief Judge Hall

specifically rejected the argument that *Apprendi* and *Alleyne* prevented the court

from using the actual 30.2 grams of crack cocaine attributable to defendant in

determining the statutory penalties under the First Step Act.  *See id*. at 7-8 (citing

*United States v. Cherry*, 326 F. App'x 523, 527 (11th Cir. 2009)).  Chief Judge Hall

concluded:

> Accordingly, at this point the Court must conclude that Derrell Gaulden
> is not entitled to the application of the rule in *Apprendi* or *Alleyne* and,
> in accordance with its unobjected-to finding in the Presentence
> Investigation Report that Derrell Gaulden distributed 30.2 grams of
> crack cocaine on December 3, 1998, the statutory minimum and
> maximum sentence of five to forty years remains as to Count 10.
> Because Derrell Gaulden's sentence falls below the statutory maximum
> of forty years, relief under the First Step Act is not warranted.

*Id.* at 8-9.[14]

This Court, therefore, can and should determine whether Samuel's violation

involved quantities that would have triggered the same penalties had the Fair

Sentencing Act been in effect.  Here, it is evident that the same statutory

---

[14] Other courts holding similarly to *Gaulden* include: *Potts*, 2019 WL
1059837, at *2; *United States v. Smith*, 2019 U.S. Dist. LEXIS 124135 (M.D. Fla.
July 25, 2019); *United States v. Wesley*, 2019 U.S. Dist. LEXIS 123030 (D. Md. July
24, 2019); *Haynes*, 2019 WL 1430125, at *2; *United States v. Howard*, 2019 U.S.
Dist. LEXIS 109055 (D. Neb. June 28, 2019); *United States v. Banuelos*, 2019 WL
2191788 (D.N.M. May 21, 2019) (agrees with the government's quantity argument;
to avoid disparity, would also deny relief as a matter of discretion); *United States v.
Jackson*, 2019 U.S. Dist. LEXIS 109993 (E.D. Pa. June 26, 2019); *cf. Glover*, 2019
WL 1924706, at *7 (holding that *Apprendi* does not apply to a resentencing under
Section 404); *United States v. Washington*, 2019 WL 2410078, at *2 (S.D. Fla. June
7, 2019) (denying motion to reduce term of supervised release, holding that the First
Step Act does not permit reconsideration of "extraneous" issues such as application
of *Apprendi* and *Alleyne*).

sentencing range would have applied under § 841(b)(1)(B), and he is not eligible for relief.  Requiring that Samuel's 2003 plea agreement include the present 28-gram-cocaine-base threshold under § 841(b)(1)(B)—despite that it was not required at the time—would create a gross disparity with similarly situated offenders charged after the Fair Sentencing Act was adopted in 2010.  This would defeat the plain Congressional intent in the First Step Act of assuring like treatment of like offenders.  Therefore, the United States respectfully requests that this Court deny Samuel's First Step Act motion.

## IV.   Alternatively, this Court should exercise its discretion and decline to resentence Samuel.

However, even if Samuel were technically eligible under the First Step Act, this is not an appropriate case for exercise of the Court's discretion to reduce a sentence.  *See* First Step Act § 404(c).  This Court has twice declined to reduce Samuel's sentence based upon guidelines amendments.  (Docs. 51, 54.)

Moreover, under the written plea agreement, not only has Samuel already benefitted from being allowed to plead to a lesser-included charge despite the 143.9 gram of crack involved, he also received the benefit of not having a double § 851 notice filed in his case.  Given the generous sentencing concessions contained in the plea agreement, Samuel should not receive an additional windfall as a result of the First Step Act.

Further, he should also not receive a windfall unavailable to defendants prosecuted for the same conduct under the Fair Sentencing Act, who received sentences based on quantity determinations keyed to the thresholds set forth in

24

that Act. A contrary result here would offend "the need to avoid unwarranted sentencing disparities among" similarly situated offenders under 18 U.S.C. § 3553(a)(6), and the need for a sentence to "reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment for the offense" under Section 3553(a)(2)(A). *See Dorsey*, 567 U.S. at 276-79 (expressing the importance of consistency in sentencing similarly situated offenders when determining the retroactive application of a statutory amendment); *United States v. Patterson*, No. 06-251, 2019 WL 3072705, \*3-\*4 (W.D.N.C. July 12, 2019) (the court in its discretion denies a sentence reduction, as the quantity involved in the case exceeded 280 grams, and the defendant would have been prosecuted after the Fair Sentencing Act under § 841(b)(1)(A), so it would cause undue disparity to grant relief).  The United States respectfully requests that this Court decline to reduce Samuel's sentence, even if he were eligible under the First Step Act.

## V.      Conclusion

For all the reasons stated above, Samuel's motion for a reduced sentence and his request for immediate release should both be denied.  (Docs. 60, 61.)

Respectfully submitted,

BOBBY L. CHRISTINE
UNITED STATES ATTORNEY

*//s// Karl Knoche*
Karl I. Knoche
Assistant United States Attorney
Chief, Criminal Division
Georgia Bar No. 426624

//s// *Justin G. Davids*

Justin G. Davids
Assistant United States Attorney
Missouri Bar No. 57661
justin.davids@usdoj.gov

P.O. Box 8970
Savannah, Georgia 31412
(912) 652-4422

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have on this day served all the parties in this case in accordance with the notice of electronic filing ("NEF") that was generated as a result of electronic filing in this Court.

This July 31, 2019.

Respectfully submitted,

BOBBY L. CHRISTINE
UNITED STATES ATTORNEY

*//s// Justin G. Davids*
Justin G. Davids
Assistant United States Attorney
Missouri Bar No. 57661
justin.davids@usdoj.gov

Post Office Box 8970
Savannah, Georgia 31412
(912) 652-4422